HILL, administratrix, *v.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al.*

1. Where it was the custom of a railway company, at a given station on its line of road, to allow persons to go into its cars for the purpose of assisting passengers boarding the same, and also customary for it to give certain signals before the starting of the train, in order that such persons might safely alight, the company was not liable for the death of one who boarded its train for such purpose, and who, in attempting voluntarily to alight from the train after it had started without the usual signals, was, by a sudden jerk of the train, thrown under it and killed, when neither the conductor nor any other employee of the company had notice of the purpose of the deceased in boarding the train, or of his intention or attempt to alight therefrom.
2. It is the duty of the trial judge to pass on the sufficiency of the facts alleged in a petition to show a cause of action in the plaintiff's favor, when this question is raised by demurrer, although the case be one wherein the plaintiff seeks to recover damages alleged to have been sustained in consequence of the negligence of the defendant.

Argued October 9,—Decided November 13, 1905.

Action for damages. Before Judge Hammond. Columbia superior court. March 23, 1905.

The petition of Mrs. A. E. Amaker made the following allegations. The Georgia Railroad and Banking Company is a domestic corporation, owning a line of railway in Columbia county, Georgia, which is operated by its lessees, the Louisville and Nashville Railway Company and the Atlantic Coast Line Railroad Company, under the name of the Georgia Railroad Company. Petitioner was

the mother of W. A. Amaker, an unmarried son, upon whom she was entirely dependent for support and who actually contributed to her support. On a specified day he went to Harlem, a station on defendant's road, in Columbia county, for the purpose of assisting his sister-in-law and three small children in boarding defendant's train there as passengers. The train was behind schedule time, and, as it approached the station, he, his sister-in-law, and the three children ranged themselves beside the track, where passengers usually board the train; and as soon as the train stopped they proceeded, with all due haste, to board it. When he, "with all due haste and diligence, had gotten the children and bundles inside the door of the car, and a seat or two therefrom, and before either the mother or children were seated, and before he could deposit the bundles, said train of cars slowly started in motion, whereupon he threw the bundles down and rushed out of the car, by the door by which he had entered, on to the platform and down the steps, attempting with due diligence to alight therefrom; [and] while in the act of alighting with due caution, a sudden lurch or jerk of the train threw him to the ground and his right leg was caught under the train of cars, crushed and mangled, producing injuries" from which he died in a few hours. When the train reached Harlem there were a number of passengers to get on and off. Neither the conductor nor any of the train employees came to assist the sister-in-law of petitioner's son and her children to get aboard, "although the conductor, flagman, and other employees saw them, or could have seen them in the act of boarding the cars and after they entered the cars." "It was the custom of said conductor and the other employees of said train of cars, and the custom of the defendant in all its passenger-trains, in receiving passengers at said station, before the train started, to holloa 'all aboard,' to ring the bell or to blow the whistle of the engine, so as to put persons assisting passengers to board the cars, and any other persons not passengers, and passengers intending to alight from the cars, on notice to leave the cars, but no notice of this kind or any other kind was given before the train of cars was put in motion. It is the custom of said defendant to permit persons not passengers to enter its cars at stations to assist passengers to board its cars and to alight therefrom." The train did not stop at the station a reasonable time to allow passengers to board the cars, nor to allow plaintiff's son

to assist his sister-in-law and her children to get aboard; and if reasonable time had been given him, he would have alighted in safety. "At the time of his injury he was in the exercise of ordinary care and diligence, and could not have avoided his injuries, which resulted in his death, by the exercise of ordinary care and diligence." His age and earning capacity were set out, as well as the amount of damages claimed.

The plaintiff died pending the suit, and Ida Hill, her administratrix, was made party plaintiff. A general demurrer to the petition was sustained, and the plaintiff excepted.

*Henry C. Roney,* for plaintiff.

*Joseph B. & Bryan Cumming,* for defendants.

FISH, C. J. By reference to the petition it will be seen that the allegations of negligence, briefly stated, were: (1) That it was the custom of the defendants to allow persons to enter the cars, in order to assist passengers boarding the train, and, before starting the train, to give certain signals for such persons to get off, but on this occasion none of the usual signals was given, and before Amaker, who, in assisting his sister-in-law and her children with their bundles, had entered the car, could deposit the bundles, and while he was standing in the aisle of the car, the train started off slowly, it not having stopped a reasonable length of time for him to render such assistance and leave the car in safety; (2) That upon the starting of the train he rushed out of the door, on to the platform and down the steps of the car, to alight therefrom, and, while in the act of alighting with due caution, a sudden lurch or jerk of the train threw him to the ground, causing the injuries from which he died. Assuming, as we must in passing on the sufficiency of the petition to withstand the demurrer thereto, all the allegations of negligence on the part of the defendants to be true, we are clearly of opinion that no cause of action was set forth. In *Simmons* v. *Seaboard Air-Line Railway,* 120 *Ga.* 225, it was held: "1. If with a clear chance to avoid the consequences of defendant's negligence or breach of duty the plaintiff voluntarily assumes the risk occasioned thereby, such conduct on his part is not merely contributory negligence, lessening the amount of damages, but a failure to avoid danger, defeating the right to recover. 2. The fact that in stepping from a moving train the plaintiff may not have been guilty of negli-

gence defeating his right to recover does not entitle him to a verdict, unless it also appears that the carrier was at the time guilty of negligence which was the proximate cause of the plaintiff's injury." As was said by Mr. Justice Lamar in rendering the opinion in that case, it is ordinarily a question for the jury to determine whether it is negligence, barring a recovery, for a passenger to step from a moving train; and a number of cases were cited wherein this court decided such conduct did not prevent a recovery, when the passenger was injured as the result of a sudden and negligent jerk of the train while he was in the act of alighting.   "But in all these cases it will be seen that the mere fact that the passenger may not have been guilty of negligence was not the basis of his right to recover. Even if he was free from fault in stepping from the moving train, that did not make the company liable.   It had also to appear that the carrier was guilty of negligence, and that negligence must have been shown to be the cause—the proximate cause of the injury. *Hardwick* v. *Georgia R. Co., 85 Ga.* 509." The negligence of the defendants, in the case now under consideration, was the starting of the train too soon and without giving the usual signals.   After such negligence came into existence and after Amaker was fully aware of it, he, rather than to go back into the car and rely on his right of action, if any he had, for proximate damages resulting to him from such negligence (*Simmons* v. *Seaboard Air-Line Ry.,* supra), voluntarily took the risk of alighting from the moving train.   The petition alleged that Amaker assisted Mrs. Attaway, his sister-in-law, and her children, with their bundles, in boarding the train at the usual place for passengers to get on; "that there were a number of passengers to get off, and a number to board the cars; that neither the conductor of said train nor any of the employees thereof appeared to assist Mrs. Attaway and her children to board the same, although the conductor, flagman, and other employees saw them, or could have seen them in the act of boarding the cars and after they entered the cars." Even if from these allegations it could be legitimately inferred that the conductor or any employee of the defendants knew that Amaker had boarded the train, there was certainly nothing in the petition to show that the conductor, or any other employee of the defendants, knew that he got aboard merely to assist his relative and her children, and that he did not intend to accompany them on their journey.   No employee of the defendants

knew, so far as the petition shows, of Amaker's intention or of his attempt to alight, and therefore no opportunity was given defendants' employees, by skillful handling of the locomotive and train, to guard against a sudden jerk as he was in the act of alighting. The jerk was not alleged to be negligent; and he was bound to anticipate the usual ·jerks incident to the running of the train. Granting that the defendants owed Amaker the duty of stopping the train a reasonable length of time for him to assist his relatives in boarding it and securing seats or depositing their bundles and for him to then alight, and that they owed him the further duty of giving the usual signals to alight, and that they failed to perform such duties, it is clear that their negligence in these respects was not the proximate cause of his injuries. He knew of such prior negligence of the defendants, and had full opportunity to escape its consequences. With such clear chance, he chose not to avoid, but to risk, the danger of alighting from the moving train, and, as was said in *Simmons* v. *Seaboard Air-Line Railway Co.,* supra, "This was not contributory negligence lessening the damages, but the failure to avoid a known danger which defeats [a] right to recover" for his death. That the plaintiff was not entitled to recover on the allegations of the petition, see *Coleman* v. *Georgia Railroad & Banking Co.,* 84 *Ga.* 1, and *McLarin* v. *Atlanta & West Point R. Co.,* 85 *Ga.* 504. In this connection, see also *Meeks* v. *Atlantic & Birmingham R. Co.,* 122 *Ga.* 266. In *Suber* v. *Georgia, Carolina & Northern Ry. Co.,* 96 *Ga.* 42, relied on by counsel for plaintiff in error, it appeared that the conductor of the train knew of Suber's intention to assist his relatives in boarding the train and that he did not intend to become a passenger.

2. Counsel for plaintiff in error contended that as the case involved the question of negligence, the judge should have submitted it to the jury and it was error for him to decide the question. It is the duty of the trial judge to pass upon the sufficiency of the facts alleged in a petition, to show a cause of action in the plaintiff's favor, when this question is raised by demurrer, although the case be one wherein the plaintiff seeks to recover damages alleged to have been sustained in consequence of the defendant's negligence. *Jarrett* v. *Atlanta & West Point R. Co.,* 83 *Ga.* 347.

*Judgment affirmed. All the Justices concur.*